Good morning, Your Honors. My name is Jeff Okrak, and I represent Don Carter and Katie Carter, the appellants in this matter. This is a case where Katie Carter was 18 years old and needed surgery in her mouth. She tendered this claim to her health insurance carrier, Health Net. Health Net denied the claim, and then a letter told her that she was required to arbitrate a dispute. Then she followed the Health Net internal procedures for appealing the denial, and it was denied finally, and it was again told that she had to follow the arbitration rules if she wanted to dispute this. So she did. She filed the demand in arbitration. Health Net did not object to the demand in arbitration, in fact, participated in selecting the arbitrator, and then filed an answer to the arbitration demand in which it did not object to the arbitration, and instead sought affirmative recovery in arbitration of a dismissal of the case and of attorney's fees. The only time the issue of whether this case is subject to arbitration came up is when the district court raised it to respond to it. Which it must. If there's a question of federal jurisdiction, you know, that's the fatal flaw in this system, is if we don't have jurisdiction, then it can be raised at any time, because we can't have jurisdiction conferred by consent, even if it's mistaken consent. So what's the federal question that we are addressing here? I don't think we are addressing a federal question. I think his statement went to the arbitration, not to the district court. Well, I thought he said the only question of issue came up in the district court. The point I'm addressing right now is not whether there was subject matter jurisdiction, but whether this case was arbitrable. The district court threw it out, saying it was not arbitrable. And the health net never raised the question of whether this was arbitrable and instead participated in a 12-month arbitration proceeding, a 12-month arbitration proceeding in which an insured was forced to spend $40,000 in costs in the arbitration proceeding and another over $100,000 in lawyer's fees and 12 months of time with no objection to the arbitration of dismissal. See, what I think we're concerned about is whether the district court here had any jurisdiction to do anything. I think there's a good argument it did not. And what is that argument? That argument is when we are seeking to confirm an arbitration award, it's not a federal jurisdictional question. Even if ERISA was a part of the case in the underlying matter, ERISA does not govern a petition to confirm an arbitration award, and I believe it did not have jurisdiction. And in addition, not only did it not have jurisdiction because it was a petition to confirm arbitration, but the insurance policy itself said that California law governs, and the insurance policy itself said that a petition to confirm the arbitration award may be brought in any court having jurisdiction over the matter, which means when we sought to confirm the arbitration in State court, we had a right to do that. And I don't believe it had jurisdiction. But to the extent you find that the district court did have jurisdiction, I would like to address the arbitrability issues. The undisputed evidence shows that Health Net required arbitration, and I know the courts already looked at this, but I look at this enrollment form, which is Excerpt 132, and it tells the Carters that arbitration is required against Health Net, the parent corporation, Health Net Life, the subsidiary, and even a physician, even a physician who didn't have anything to do with this policy is subject to arbitration. And so the Carters pursued arbitration. Then the letters from Health Net told the Carters they had to arbitrate. And then in the arbitration provision, Health Net pursued arbitrable remedies, sought to recover attorney's fees. Everything in this entire case, including an amended answer by Health Net, pursued arbitration and asserted remedies in arbitration. And in fact, Health Net argues that it sought to object to arbitration because it sought to dismiss the case. It filed motion for summary judgments. It did all of these motions in the arbitration asking the arbitrator to dismiss the case on the merits, telling the arbitrator we want an award in our favor on the merits. And by the way, once we win, we want our attorney's fees. There was never an indication that anyone believed this was not subject to arbitration. There was never an objection. Now, the district court raised a case which said that the trial court has to rate, that the courts, not the arbitrator, has to determine arbitrability. In the case the district court relied on is American Builders v. All Yang. In that case, which is very informative for us, the builder was sued and did not respond to the arbitration. Then the arbitrator ordered Builder to respond, and Builder went to the court and said, we want you to enjoin the arbitration. We're not subject to it. That's not what happened here. There was no objection to arbitration, so there was never a court who would get involved in this matter. Health Net also relies on a case called Carpenters 46, and it says that an arbitrator doesn't have the right to determine alter ego. But they took that out of context. What the court said there was a case was brought, an arbitration was brought against the defendant, but they never brought the defendant into the case. He never defended himself. So there was no due process right, and so the court said you can't make an arbitration award against somebody who never had a right to fight the case. There is no case that says that when there's an arbitration agreement between Health Net and a party, that Health Net's not a part, not subject to that. In addition, not only is Health Net bound by the arbitration clause because it was a party to the contract, it was an agent of its subsidiary. And, in fact, in this case, the evidence submitted below shows that Health Net, the parent, is the one who performed all of the activities related to this health insurance policy. Health Net is the one who marketed the policy. Health Net's the one who collected the premiums. Health Net's the one who determined whether a claim was covered or not covered. Health Net is the one who sent the letters to the Carters saying we deny your claim. And, in fact, if you look at any one of the letters, you'll see, for example, at page 173, it's a Health Net of California, the appellee in this case, letter by a Health Net of California employee with no reference to the fact that there was a subsidiary that was supposedly the underwriter of the policy. There is simply no basis not to hold Health Net to arbitration in this case. And if you have no questions, I'll reserve my time. Thank you, Counsel. Thank you. Good morning, Your Honors. My name is Lawrence Rose from Epstein, Becker & Green, and I represent the respondent and appellee, Health Net of California. To address what I understand to be Your Honor's primary concern, this Court does have jurisdiction, as did the district court below. This matter plainly arose under ERISA, and the law of the Ninth Circuit is clear that it arose under ERISA. Absolutely. Tell us how. This initially began as a claim for health benefits. The arbitrator, which were conferred through an ERISA-governed plan, an employer-sponsored health benefit plan. The arbitrator found that the case was governed by ERISA. The claimant, at the time of its petition to enforce the award, affirmatively sought relief under ERISA. The petition to enforce the arbitration award asked for an additional award of attorney's fees, specifically stating, pursuant to the terms of ERISA 1132. Don't we have cases that say that's not enough? Fee-shifting provisions cannot themselves confer subject-matter jurisdiction that's otherwise absent in Ray Knight? I understand that, Your Honor's point, but I don't believe that subject-matter jurisdiction is otherwise absent. This is, at its heart, a claim for benefits under an employer-sponsored health benefit plan. But also, at heart, this case is whether an arbitration award should be confirmed, and that's not a Federal question. Your Honor, the Ninth Circuit has held to the contrary. In Johnson v. England, the Court expressly approved the removal of a petition to compel a labor arbitration, and That would be an LMRA case, however. Were jurisdictions specifically conferred on the Federal court? As is, I'm sorry, Your Honor, precisely the same is true of ERISA. The Pilot Life case, which is referred to in my brief, I'm sure the Court is familiar with, the 1987 United States Supreme Court case, adopted much of the LMRA jurisprudence, as did Metropolitan Life v. Taylor. Again, references made in our brief, and I'm sure the Court is familiar. Both of those cases have determined, as has the entire jurisprudence of Article of Section 29 of the United States Code, that cases under the FLSA, the LMRA, and ERISA are harmonized and present a unique form of Federal preemption, so that they automatically, so that a case that is otherwise a well-pleaded complaint is necessarily reformed to present a Federal question. That is the precise holding of Metropolitan Life v. Taylor, and that's precisely what happened here. The claim in arbitration sought an award of health plan benefits under an ERISA-governed plan. That claim is necessarily a Federal claim. That claim was then attempted, confirmation of that Federal claim was then attempted in the Superior Court. An additional award under ERISA was sought by the claimant in that case, and that was the matter that was removed. In that circumstance, this Court has consistently held that the underlying action is so uniquely Federal in character that it becomes as if it were a maritime arbitration, that there is an overriding Federal interest in a broad harmonization among all the labor-related, employment-related causes of statutory rights and causes of action under Section 29. Does the ultimate disposition of the case rely in any way on a resolution of a substantial question of Federal law? Yes, Your Honor, it does, for this reason. The appellant's brief here has focused on the right of an arbitrator to determine who is properly subject to the arbitration proceeding. That is one of the grounds that was presented as a basis to vacate the petition or vacate the award. But, counsel, that's not uniquely Federal. That's not ERISA. Understood, Your Honor. That is only one of the grounds that was presented in the petition to vacate or the motion to vacate the award. The other ground that was presented that is uniquely Federal is the failure of the obligation that was specifically imposed on him by the arbitration agreement. Now, I'm very much mindful of Judge Fletcher's recitation of the general rule of arbitration in which the Court has extraordinarily limited ability to review. In this particular case, in accord with Federal and State jurisprudence, the arbitration agreement specifically provided that the award must comport with law. In this case, the arbitrator made two primary and a third lesser failures to comport with ERISA. First, the arbitrator entered an award against a party that was on its face the third-party administrator and independent administrator of the health benefits plan. Under plain Ninth Circuit precedent that goes back to 1990 or before, that's simply not available. This Court decided Gilardi, G-E-L-A-R-D-I versus Pertek, again cited in the brief, which held that a claim for health plan benefits under ERISA must be brought against either the health benefit plan, which is a legal entity created by ERISA, or against its proxy. In this case, HealthNet Life Insurance Company, the indemnitor of the plan. That didn't happen here. The relationship of the two entities with the words HealthNet in their name, HealthNet Life Insurance on one hand and HealthNet of California on the other, is a relationship defined by the administrative services agreement between them. That document is in both the appellant's record and in the appellee's record. It was Exhibit B to the petition to vacate the arbitration award. The arbitrator himself confirmed that the relationship between these parties, between those two entities, was subject to the administrative services award. I'm sorry, the administrative services agreement. Under that agreement, HealthNet of California, the appellee here, provided certain services of an administrative basis. They did not fund benefits. A claim for benefits under Gilardi and the several cases that have been decided by both this Court and the California courts of appeals since, a claim for benefits must run against the plan itself or an appropriate proxy. That is a unique issue of Federal law. The failure to comport or to conform the arbitration award to that requirement is a unique issue of Federal law. But what would we do with the issue of waiver? Your Honor, waiver is a matter of subject matter jurisdiction. It is always reviewable. And it is the determination of the court below on that point may only be overturned for clear error. But let me suggest to the Court that it is absolutely fruitless to suggest here that a waiver occurred. Under the rules of the American Arbitration Association and its Rule 31, the process of asserting a jurisdictional defect, a failure of subject matter jurisdiction, is the precise opposite of what we're all used to dealing with. Unlike the Federal court system where jurisdiction is a question that must be addressed on day one and on every other day thereafter, Rule 31 of the AAA specifically entitles the arbitrator to reserve a question of subject matter jurisdiction to the end of the arbitration. Now, in this case, the suggestion that Health Net of California failed to object to the arbitrator's jurisdiction is really belied by the record here. The record demonstrates, and again, the record here is somewhat unique in that it primarily consists of attorney affidavits. The point I'm trying to make, counsel, is that that's a State law question. That, I agree, is a State law question, and it is one of the bases under which this arbitration award needs to be overturned. It is not the exclusive basis. What's the ERISA basis? The ERISA basis is a failure to comport with the ERISA requirement, which is that an award may only enter against the plan or its proxy. And under Audit Services v. Rolfson, assuming that the arbitrator had subject matter jurisdiction to decide a claim against Health Net of California under subject matter jurisdiction as it exists under California State law, the existence of alter ego is a Federal question. And under Audit Services v. Rolfson, none of the three criteria were satisfied in this case. So, again, the arbitration award fails to comport with the applicable Federal substantive law. Why is alter ego a Federal question? Because the parties involved are ERISA parties, Your Honor. They are ERISA players. They are subject to the ERISA scheme, both the claimant, the health plan itself or its proxy, which in this case is Health Net Life, its indemnitor, and Health Net of California, the independent administrator. Is that a different question from the original question about proper award, the jilardi? Or is that just part of that? Is that a separate Federal question or just a dependent question arising out of what you say is the ERISA? Your Honor, I confess I'm not precisely clear on the question. Well, you said that when I asked you what the ERISA question was, you invoked the jilardi case. Correct. Then you say also there's the question of alter ego. Correct. Is alter ego tied in with the jilardi question or is it a separate question? Aren't they tied together? Now that I understand the question, I'm not sure I know the answer. Okay. They are certainly interrelated. I do believe, however, that the failure to apply the appropriate substantive law of alter ego constitutes a second and independent basis on which the Court has that this Federal court and, indeed, the drug court. So you're saying there's a Federal common law of alter ego that has to be applied here or there's ERISA law on alter ego? There is Federal common law. We don't look to the State in which the ---- That's correct. There is substantive Federal common law construing alter ego in the context of ERISA that controls. And that is presented in the briefs in Audit Services v. Rolfson. The third reason, and it may be the minor of the three, is that the arbitrator failed to comport with the requirements of ERISA and failed to conform the award  The health plan documented issue is precise in stating that if you obtain healthcare outside of the preferred provider network, the benefits available are a percentage of RBRVS. RBRVS is the Medicare payment scheme. This health plan chose to adopt an independent, in fact, Federal scheme of payment of reimbursement amounts. I'm not arguing that that presents a Federal question. However, this is an independent, objective fee structure. The arbitrator failed to conform his award to that requirement of the contract. That requirement of the contract is an obligation enforceable in ERISA. And the failure to comply with ERISA in that regard creates a third, albeit somewhat minor, basis of Federal question jurisdiction. With regard to the substance of the Federal question, but it's not a substantial Federal question. I'm trying to understand. Are you saying it is or is it not? I might have to confess that, Your Honor. The principal point presented by the appellants in this case is that despite the clear requirement of California law, which is also echoed, California law, which controls the party's ability to obtain a reformation of the award or have it vacated, the right to proceed against a respondent in arbitration that is not a party to the arbitration agreement must be determined by the court. Now, for the appellants to obtain relief from this settled point of law, it seems to me that this Court should look through the record for some basis to conclude that they were prevented somehow from having a full and fair opportunity to litigate their claim against the appropriate defendant. And in fact, the record here clearly reveals Health Net Life was added to the case at the request of the claimants, and then fully informed of the function of these companies, the claimants chose to dismiss Health Net Life for reasons of their own litigation strategy and proceed against Health Net of California under this alter ego theory. So plainly, the answer to the first question here is no. There is no basis in the record to determine that these people were deprived from having their day in court in an alternative forum. Having answered that question, then it seems to me that the obligation of this Court is to determine whether there is any sense of justice or fair play or public policy that requires that this Court create for these claimants an exception to that settled rule. And again, the answer is no. To the contrary, for the reasons that Judge Fletcher expressed, there are very strong public policy reasons in favor of holding these claimants to the general rule that the obligations of a nonsignatory must be decided by a court and not by an arbitrator, and that's simply because an arbitrator ordinarily has virtually complete discretion in fashioning an award. Absent the ability to have the principles of law apply to a nonsignator, the arbitrator's at minimum results that will be virtually immune from review. There is also, however, a second public policy fault, and that is by requiring a claimant seeking to hold a nonsignator responsible under an arbitration agreement to go to court, you eliminate the need for the respondent to begin a second action. Your Honors, I would submit to you that at the time that Health Net Life — I'm sorry, let me restate that. At the time that Health Net of California, the respondent appellant here and the respondent in the arbitration below, at the time that they received the demand for arbitration, they had three choices. Knowing that they were not the proper party, they could simply ignore it. In that case, under Rule 31, they would — of the AAA rules, they would have a — oh, excuse me, I misspoke. The arbitrator's right to reserve the determination of jurisdiction to his final award is AAA Rule 8 of the commercial rules. The right — the opportunity to ignore a demand for arbitration and risk a proceeding without its presence is governed by Rule 31 of the AAA rules. Rule 31 says the mere failure of a party to attend will not support a default. The movant, the claimant, has to put on evidence. The distinction between that and a default is somewhat limited. It would be extraordinarily difficult to recommend to a client that they ignore a demand for arbitration. There are other options in those circumstances to file a suit to enjoin. And if Your Honors heard today a complaint that Health Net of California complicated this proceeding and stretched it out over a year, you could imagine the complaint that you would hear were we here on an appeal from an order enjoining arbitration. Again, the claim would be the insurance company or its equivalent, in bad faith, use litigation tactics to avoid the clear obligations it owed to a subscriber. The company's position would be no greater advanced. And, in fact, public policy would be no greater advanced by having a separate action commenced. Well, exactly what defense did you put on before the arbitrator? Did you say, you know, we're not the proper party? Absolutely, Your Honor. The demand for arbitration was served in November 2001. Health Net of California responded and raised legal defenses which were identified by the district court below as sufficient to raise the issue of subject matter jurisdiction in arbitration over the wrong party. The matter was set for a preliminary hearing about 60 days later. In advance of that preliminary hearing, a motion to dismiss was filed stating – well, let me back up. In advance of that preliminary hearing, informal notice was given to the claimant's counsel that he'd sued the wrong party and that the matter was governed by ERISA. But thereafter, those issues were affirmatively presented to the arbitrator in a motion to dismiss the arbitration based on the failure to join the proper party and in a motion to dismiss claims that had been presented in the arbitration, damages claims that had been presented in the arbitration, as external and prohibited by the exclusive remedies created in ERISA. So those two points were presented before the time that the arbitration work was commenced. These same points were presented in a motion for summary judgment that the record reveals the arbitrator declined to hear since it was presented only a month before the time of the arbitration hearing. He felt disabled from being able to analyze the motion appropriately. So now, having had no ruling on its original motions to dismiss, no ruling on a motion for summary judgment, motions were made at the outset of the hearing, again in the nature of a motion for non-suit, saying we're not the right party. And at that point, the ERISA determination had already been made. Motion the point was also argued to the arbitrator at the conclusion of the hearing in briefing, post-hearing briefing. So this point was made to the arbitrator on each occasion that it was possible to present it. When did Health Net Life, it was in for a while and then out? Health Net Life was in for approximately 10 days, Your Honor. Leave to add Health Net Life was granted on May 2, 2002, in an order, Your Honor, that specifically states no objection having been raised by Health Net of California, which, in fact, was the truth. The plaintiff moved to, or the claimant, rather, moved to dismiss Health Net Life in a letter brief to the arbitrator on May 10, eight days later. This was the result of the claimant's litigation strategy in order to oppose Health Net Life's attempt to assert its own defenses and take advantage of the procedures offered to it by the AAA rules. The order dismissing Health Net Life, I'm sorry, the claimant's request or motion to dismiss Health Net Life was vigorously opposed by both Health Net Life, which had already appeared, Health Net Life appeared by letter on May 2, opposed by Health Net Life and by Health Net of California. And, Your Honors, without telling tales out of school or infringing on my attorney I'm confident that you are aware these are two highly regulated companies. Health Net Life of California, on one hand, by the California Department of Managed Health Care under the Knox-Keene Act, and Health Net Life independently by the California Department of Insurance under the California Insurance Code. Their reporting obligations and their other internal and external obligations provide a very compelling basis for them to appear and attempt to distinguish whose obligation an award to the Carters might be. Indeed, that fact alone, under any appropriate and, indeed, any Federal standard of alter ego, would prohibit a finding of alter ego in these facts. Under Audit Services v. Rolfson, a finding of alter ego requires some kind of fraudulent misuse of the corporate forms. But I ask, because your time is running out, I just wanted to go back and clarify one thing. You said that the arbitrator recognized this was an ERISA claim or words to that effect. Other than his reference at the end of the conclusion in his tentative award where he refers to ERISA, is there some other place where he specifically did that that you had in mind? There is, Your Honor. And I can tell you that there is a specific memo ruling that is contained in the appellant's appendix. And if the Court desires, I'll find it now during the question. If you have a quick cite, that's fine. I just wanted to know what you were saying. I don't have that cite for you here. There is a two- or three-page ruling that the arbitrator made prior to the commencement of the hearing concerning the application of ERISA to this claim in general and the preemptive effect of ERISA on California Civil Code Section 3428, which is an attempt by the California legislature to create a cause of action outside of ERISA. It is a two- or three-page ruling. It walks through very carefully the effects of pilot life, rush versus we got it. Got it. You can get his reference to it. Your time has expired. Thank you very much. I have the cite for you, Your Honors. It's our appellate record, page 52. And what that ruling by Judge Jane Garris says is that state law of California governs this dispute, but that ERISA limits the damages that are recoverable. And that's under the United States Supreme Court case of Rush Prudential and the United States Supreme Court case of Unum. So this was always a state court claim. California has a regulatory scheme about insurance bad faith, just like the case we had here. The only unfortunate part is the United States Supreme Court said we're not entitled to recover punitive damages because ERISA prohibits that. So it says state law governs, but ERISA what? Limits the damages. ERISA dictates that damages are limited to the benefits that were denied and attorney's fees. So you cannot recover, for example, emotional distress or punitive damages under ERISA, and that governs this case. So ERISA is at play. Yes, it is at play. Going to the point of whether Health Net objected to the arbitrability and whether it said it was not a party to the contract right from the beginning, I point you to page 178 of the record, which is the answer by Health Net. In which it says, quote, these answering defendants, and there was only one defendant, that was Health Net, alleged that plaintiff and defendants entered into a written contract and plaintiff has failed to perform pursuant to the terms and conditions of that contract, thereby depriving the defendant of the benefits of the bargain. They always asserted that this was a dispute between Health Net and the Carters. It wasn't until six months after we filed this claim that they came up with the idea that they could get out of this liability by saying that it was underwritten by Health Net. We heard a whole recitation of incidents that supposedly represented their statement that they're not the right party. That's all? None of that happened? No. What they did, this is in their answer to the complaint. But what about all the other stuff we heard about? Those were motions asking the arbitrator to dismiss the case or asking the arbitrator to grant them judgment, summary judgment. On the ground that they weren't the right party? Right. Okay. So all that did happen? Yes. But they never argued that they were not subject to the arbitration of this dispute. And that's what's critical here. We already had an arbitration. I don't get the distinction. They're saying we're not the party to this whole thing. So how can they be subject to the arbitration? Isn't that tantamount to the same thing? Not at all. We have an arbitration agreement, not the insurance policy. Let's look at the two different documents. And what's the purpose in saying we're not the right party? To say that we shouldn't be subject to liability. There is a clear distinction between someone saying you cannot haul me into arbitration because I'm not a party to the arbitration agreement and someone saying I'm going to arbitrate a dispute about whether I have a liability or not. And that's what they did. They argued asking the arbitrator to render a decision in favor of Health Net that they were not liable. On the issue of arbitrability, we have the enrollment form. That they were not liable because they were not a party. That was their argument. That they were not a party to the insurance contract. Let's be clear here. There is an enrollment form in which the Carters agreed that they would take any dispute to arbitration. And it says they would arbitrate any dispute against Health Net of California, Health Net Life, or any physician. And under that agreement alone, they're subject to arbitration. When Health Net argued that it shouldn't be liable in the arbitration because it's not a party to the contract, that's a fair dispute. That's no different than saying, because they also did say, we're not liable because under the terms of the policy, we have no liability. And that needs to be underscored. They fought tooth and nail saying that the policy itself does not provide coverage for this treatment that Katie Carter received. They lost on that. The arbitrator said it clearly is covered under the policy. And under the whole line of cases that we cited for the court where a party is not a party to the arbitration agreement, but the contract with the arbitration clause is integral to the whole case, then they're subject to the arbitration. That would be the Nagin versus NEC case, which is a Ninth Circuit case. That would be the Daniel case, which is a Ninth Circuit case. All of these cases say that when the dispute between the parties is integrally related to a contract that provides for arbitration, and where their defense relies on the contract itself, then they're subject to arbitration. And that's for a person who didn't agree to arbitration. Your time has expired. Is there any other? No. She's got it all wrong. He had about ‑‑ she's running it wrong. The clock's running wrong. Yeah. I'll keep it brief, nevertheless. Go ahead. But don't feel pushed. How much time is there left? I think he has about ten minutes left. How much? Go ahead. Okay. I'll take my three. In the Nagin case, again, that's Ninth Circuit, Nagin signed an employment contract which did not contain an arbitration clause. But the employment manual did have an arbitration clause. They went to arbitration, and then Nagin, after they already participated in arbitration, objected to the arbitration. And the Court said it's too late. You waived the right to object to arbitration. You participated in it. And that's the same case as Mediclad Corporation, which is a California case in 2003. In that case, the arbitration clause was between two parties and not the person who objected. But the person who was objecting to the arbitration had to invoke the language of the contract for its defense and for its affirmative claims. And the Court said you can't use the contract as a sword and as a shield. You're either subject to the contract or you're not. Here we have HealthNet being subject to arbitration because of the enrollment form, but we also have it subject to the arbitration because its whole defense, at least part of its defense, was under the health insurance policy, we're not liable because dental services are not covered. That was its main argument, and it lost. If you have no further questions, I submit. Thank you, counsel. Thank you both. Case just argued is ordered and submitted. Good arguments on both sides. Thank you very much. Thank you.
judges: B. Fletcher,trott, Fisher